Our last case for argument this morning is Sinkevic v. Garland. Good morning, Your Honor. Mr. Gambacorta. Yes, may it please the Court. Timothy Gambacorta on behalf of the Appellant, Ms. Sinkevic. We're here today because the Board of Immigration Appeals did not properly analyze our argument that the Appellant, that the IJ, failed to reason that the Appellant had not shown past persecution. Mr. Gambacorta, does the record reveal why deportation proceedings were initiated against Ms. Sinkevic? I did not have the case initially. Her prior counsel had applied for asylum, and I don't know if prior counsel did his research, but if you apply after one year, you are typically, you don't qualify for asylum. There's an on one year. When was this application filed? I believe 2013, I believe. 2013 is when the removal proceedings began. I'm sorry. She entered this country in 2002. Right. That's an 11-year gap. Correct. It was way beyond one year, and so there was no asylum here. The only thing that I could argue was withholding, and the bar is a lot higher. It's more likely than not. And I had argued in my brief before the BIA that not only did the Appellant sustain persecution in the form of having her ear ripped, and she was teased, persecuted, hit, because she was a Russian Jew in Lithuania. At that time, the people spoke Polish and Lithuanian. I had also argued that because they stabbed her mother in front of her, and her mother, as a result, was paralyzed, even to this day. Was it to send a message that, well, if you're a Russian Jew in Lithuania, we're going to discriminate against you? Possibly. Was the argument that the stabbing was in any way directed at Sienkiewicz, the daughter, or was it always that it was at the mother? It was to the mother. Admittedly, the opening brief could have been a little bit more clear to the BIA. I should have used prosecution by proxy or something like that. I didn't use that. I used page three. I said, these acts of violence and intimidation against respondent's person and her family were strictly due to the respondent's nationality and religion and should be considered as evidence of past persecution. I thought I had addressed that before the board. Was it as succinctly as it should have been? Probably not. But I believe I did raise the issue. And the whole point is we need past persecution to get a presumption of future persecution. So I believe that enough evidence was established at the immigration court level as well as the BIA level. Of course, opposing counsel disagrees and says, well, it was waived. But at least that issue should have been expounded upon at the BIA decision. They ignored it. In terms of my argument for some future persecution, I had introduced, pardon me, the government had introduced State Department reports. And it says, well, we are the government of Lithuania is working hard to solve this discrimination against Jewish people. So, therefore, it's safe to go back there now. But the board doesn't even talk about my argument. Just because people are working on correcting a problem doesn't mean it's solved. I don't understand your argument. You're assuming that private discrimination is the same thing as persecution. But it's clear in the law that persecution means action of the government. If the government shelters or condones private wrongdoers, we tend to call that persecution. But if the government tries to stop the private wrongdoing but just can't succeed, we don't call that persecution. The United States doesn't persecute Jews, though there is private discrimination against Jews. That's the situation. We don't call that persecution just because it isn't fully suppressed. So why should we think there's any persecution in Lithuania? Are we talking past persecution or on future? Let's talk future persecution. Lithuania has been a member of the European Union now for 17 years. All forms of discrimination are forbidden in the European Union. I don't see any argument in your brief that Lithuania is in violation of its obligations, its treaty obligations. So where's the persecution? Private misconduct is just not the same as persecution. Most of my argument in the brief dealt with past persecution because you can't get to future persecution unless you have established past persecution. And even when the respondent's mother was stabbed, she even tried to go to the police and make a police report. And the police report said, we Lithuanians, we take care of our own people. You're a Russian Jew. Go back to Israel. That's what the respondent said at trial. And so I would argue that the board, this matter should at least be remanded back to the board so they could consider the persecution by proxy argument that I've made this morning. Thank you. Good morning, Your Honors. Good morning, Your Honors. May it please the court. My name is Jessica Strogas. I'm here on behalf of the United States Attorney General. Your Honors, the government believes that the petition for review should be denied because substantial evidence supports the agency's determination that misdemeanor is a crime. I think it came up a bit that the crux of this case really seems to be, did Ms. Sienkiewicz properly exhaust her persecution by proxy argument before the board, and the government's position is that she did not. I believe it was Judge Easterbrook's decision in Chavarria race is the most recent decision that I've seen where this court has thoroughly addressed what your decisions of the court. Yes, Your Honor. Speak for the court, not for their author. Yes, Your Honor. But where the court had most thoroughly most recently thoroughly discussed what this exhaustion requirement is, and the court stated that exhaustion is a mandatory claims processing rule that must be enforced if the litigant claims its benefits. And in that case, much like this case the petitioner sought relief based on an argument that could have been made before the agency but was not. Now I do not contend that Ms. Sienkiewicz raised and testified about harms that occurred to her family members in Lithuania in the 1980s and potentially the 1990s. In her briefing to the board and obviously her testimony before the immigration judge, but she never argued or raised any contention regarding derivative persecution or persecution by proxy. She did not argue that the harms that befell that unfortunately befell her family members were intended as persecution to herself. And simply that essentially means that she did not exhaust that argument and that the board was not given the opportunity to pass on that legal claim that she's now making to this court. Otherwise, she testified that she was mocked and hit by their children and teachers in grade school, that she suffered anti-Semitic slurs, that she overheard warehouse workers that she didn't know talking about her physical attributes, and it led her to believe that she may be a target for being sold into sexual slavery, but that no attempt was ever realized in doing so. And that is what occurred to her personally. And that, while unsettling those events and while certainly discriminatory and unfortunate, simply does not rise to the extreme level required of past persecution, where this court has said that it generally requires the use of significant physical force or non-physical harm of the same gravity. So without establishing past persecution, she had the burden of showing that it was more likely than not that she would suffer future persecution. And in this case, she admitted that she was not aware of current conditions in Lithuania. She had not been to Lithuania since 2002. Her mother and her sister lived there and appeared to be unharmed. And the country conditions evidence in the record does not support her expressed fear of future persecution, where it pretty thoroughly shows that the Lithuanian government and the general population of Lithuania supports the Jewish community. Just because the government is trying to rectify for past harms, for example, Lithuania being an Eastern European country affected by Nazi Germany, as well as the Soviet Union, does not mean that that discrimination or potential harm has continued into the present. In fact, in the respondent's brief, there are several details, but some that I would highlight are that the Jewish religion is recognized as a traditional religious group and has special benefits for that reason. The law penalizes criminal, it provides criminal prosecution for publishing religious hatred, discrimination based on religion, interference with religious ceremonies and inciting religious hatred. There are compensation funds to support Jewish education, religious, scientific, cultural and healthcare projects with public benefits. And there have even been instances where members of the Lithuanian government have publicly spoken out against anti-Semitism and in support of the Jewish community. So taken together, the country conditions evidence, as well as Ms. Sienkiewicz's admission that she does not know about what current conditions are for the Jewish community in Lithuania, provides substantial evidence for the agency's determination that she did not establish that it is more likely than not that she would suffer future persecution in Lithuania. So, Your Honors, if there are no questions in this case, the government requests that the petition be denied. Thank you. Thank you, Counsel. Anything further, Mr. Gambacorda? As a rebuttal, the appellant here, she had her ear torn off and her mother was stabbed. If that can't be called significant harm, I don't know what can. In terms of the failure to exhaust argument, the Board of Immigration Appeal Brief, although it's not as clear as it should have been, the imputation argument that if a family member is injured or persecuted, it's imputed to the respondent, I believe that that was adequately made. Thank you. Thank you. Thank you very much. Case is taken under advisement and the court will be in recess.